SALVIO DURÁN VÁZQUEZ, Plaintiff and Appellant, v. HEIRS OF EMILIO B. DURÁN, Defendants and Appellees.

No. 7322. Argued December 15, 1937.—Decided July 30, 1938.

Leopoldo Tormes García and Felipe Colón Díaz for appellant. Fernando B. Fornaris for appellees.

Mr. Justice Wolf delivered the opinion of the court.

The fundamental issue of this case turns upon the authenticity of a writing purporting to be the last will and testament of Emilio B. Durán who died in the city of Ponce on July 19, 1924. The holographic will in question reads:

"I hereby appoint my wife Monserrate Rivera as my sole and exclusive heir to the total of the inheritance that may be obtained in the pending action regarding the estate of my deceased father Baudilio Durán, as well as to any sum to be obtained by way of compensation arising out of the sinking of the SS. Carolina, which claim has been entrusted to Attorney Ortiz Toro for its prosecution.

"As she is the only person fully entitled and empowered to act regarding this and all of my other affairs I also advice her that I leave no debts, not even with the lawyers who are working on a fifty per cent basis on whatever is collected.

"This instrument shall go into effect after my death.

"Ponce, June 14, 1924.

"(Signed)     E. B. Durán.

"It is my will, moreover, were I not able to build a monument over my mother's grave, that she should do so in my name and, if possible at my death, that I be buried with her.

"(Signed)     E. B. Durán."

From the evidence it appears that Durán's widow, Monserrate Rivera, first consulted with Attorney Pedro Albizu Campos as to the validity of such a writing that she at first beieved it to be of no value. After an examination of the document which satisfied Albizu Campos of its legal validity, the same was taken to Attorney Arturo Ortiz Toro, who, on May 6, 1925, filed the recited holographic will before the District Court of Ponce, for probate. Pursuant to the requisite procedural steps, the will was finally approved as authentic and its registry or probate ordered by the court on June 8, 1925. A little over seven and a half years thereafter, the present suit was nominally filed by Durán's only brother, Salvio (no descendants or ascendants had survived the deceased), to annul the will and thus obtain his hereditary portion under the law applicable to intestate succession.

Ana Inés Durán, the plaintiff's only sister, is joined as party defendant because she refused to join in the plaintiff's pretensions.

Three causes of action are set forth in the complaint. The first of them is the really important one and the others follow as a necessary consequence. The validity of the will is therein attacked on two grounds:

"(a) Because the date affixed to said instrument is inaccurate as the same has been maliciously erased and another affixed in its place.

"(b) Because the hand and signature of Emilio B. Durán on said holographic will have been forged, since the same is not written or signed by him in his own handwriting."

By the other two causes of action both a right to the entire inheritance is claimed under the principles of intestate succession, and the right to a specific sum of money received by Durán's widow after his death as a result of one of Durán's personal claims.

The lower court decided that the will was authentic and originally written and signed by Emilio B. Durán, and that whatever erasures appeared on the face thereof had been effected at some time after the will was probated in 1925. In dismissing the complaint it imposed costs upon the plaintiff.

■ The first assignment of error objects to the admission in evidence of a deposition by Attorney Pedro Albizu Campos. The proposition is that notice of the taking of the declaration reached the appellant less than 48 hours before Albizu was to appear. Section 505 of the Code of Civil Procedure (1933 ed.) provides:

"Either party may have the deposition of a witness in Puerto Rico taken before a judge or officer authorized to administer oaths, on serving upon the adverse party previous notice of the time and place of examination. Such notice must be at least five days, adding also one day for every twenty-five miles of the distance of the place

of examination from the residence of the person to whom the notice is given, unless for good cause shown a judge of the court by order prescribes a shorter time. When a short time is prescribed, a copy of the order must be served with the notice.''

Appellant contends that there was no ''good cause'' *(causa justificada)* shown by the defendants and that the court committed an abuse of discretion.

The first objection rests upon the fact that six months before the incident under discussion, when the case was originally to be heard, the defendants had filed a motion requesting that Albizu's testimony be taken in San Juan as it would be impossible for him to attend the trial. The reasoning is that the above shows that appellees knew of this inability of their witness to appear personally, six months prior to the trial and should, therefore, have filed their motion with more than three days' time. The motion was actually filed on January 9, 1935, granted on the following day, and the deposition set for the 12th.

Appellant does not convince us that the court committed error in admitting the deposition in evidence. No objection to the urgency with which the whole operation was accomplished was ever presented by the plaintiff at any time before the actual trial. No extension of time was requested in order to be able to appear at the taking of the declaration. Furthermore, Albizu's testimony is cumulative, although quite material, but its absence would not destroy the case for the defendants. In view of all this, no error should be charged to the court.

The second assignment of error hardly merits discussion. The court had refused to allow a question to be put to the defendant widow on the ground that she had already answered it. Aside from the fact that no exception appears to have been taken by the appellant, we are ready to agree with the trial judge that the question was a mere repetition, had been sufficiently answered theretofore, and

hence the incident was covered by section 513 of the Code of Civil Procedure (1933 ed.), which reads as follows:

"The court must exercise a reasonable control over the mode of interrogation, so as to make it as rapid, as distinct, as little annoying to the witness, and as effective for the extraction of the truth as may be; but subject to this rule, the parties may put such pertinent and legal question as they see fit. The court, however, may stop the production of further evidence upon any particular point when the evidence upon it is already so full as to preclude reasonable doubt."

Furthermore, the importance of further cross-examination was not clearly shown.

■■ The next two assignments of error attack the most important findings of the lower court. The contested will presents certain erasures on the date thereof. This portion reads, "Ponce 14 Junio 1924." The 1 in "14," the last three letters in "Junio," and the 4 in "1924" offer unmistakable evidence of erasures. Looking at the document against a bright light, it shows clearly where the paper has become thinner and as a result the transparency is greater. Appellant maintains that the evidence does not support the court's conclusion to the effect that the holographic will introduced in evidence had no erasure when presented to the District Court of Ponce for probate. He also attacks the trial judge's qualification of the signatures and writing on the instrument as authentically those of Emilio B. Durán.

We need not indulge in a detailed discussion of the evidence in this case. Fundamentally we concur in almost all that is said by the trial judge in his opinion. As a result of an analysis of the testimony and our personal examination of the exhibits, we have become convinced that Emilio B. Durán wrote the holographic will now before us and personally signed it. We likewise conclude that the preponderance of the evidence clearly admissible shows that when the will was probated in 1925 it was valid legally.

With regard to the authenticity of the signatures and writing we wish to state expressly that our independent study

of the will and of the other documents presented therewith has convinced us of its authentic testamentary origin. It is true, as the lower court says, that Durán undoubtedly was an unusual penman and often indulged in a change of handwriting style or slant. There are many people in this world, of a poetic or idealistic nature, as Durán seems to have been, who write in different style according to the prevalent mood at the moment.

On inspection, the handwriting in the body of the will and the signatures differ. We have closely considered the signatures on the checks, citizen's identification card, passport, letters and deeds, and from their comparison with those on the questioned document, we agree with the lower court that the signatures thereon were written by the same person, and that that person was Durán. As to the handwriting of the main body of the instrument, the evidence is not so abundant but there is a sufficient showing to the effect that Durán did at times write that way. The script on the postcards signed ''María Teresa'' and ''Malén'' respectively, possesses a marked similarity with that in issue. The testimony of Magdalena Oliver, known as Ana Inés Durán, supported the authentic origin of the writing on the postcard signed ''Malén.'' Francisco Larreguera identified the writing on the other postcard which he says was written in his presence by Emilio B. Durán himself. Durán had acted as accountant for Larreguera. In addition to the above evidence, an inscribed photograph of the deceased, dedicated to his wife, was presented. The writing resembles that on the will very closely. Other documents were introduced in evidence, among them the original of a deed executed before Notary Public Leopoldo Tormes, wherein Emilio B. Durán signs as a witness and in representation of one of the parties who did not know how to sign. A similar difference between the signature and the few words which precede it are evident in this instrument.

The testimony of the expert penmen Drew, Valiente, Percy, and Timothée is interesting, but we find no reason to depart from the findings reached by the trial judge. Timothée, for instance, believed that the signatures on the instrument and the body thereof were written by different persons. Drew arrived at the same conclusion after a five-minute study. We can not agree with their observations.

Given our opinion upon the matter of the authenticity of the writing on the will, the assignment of error concerning the origin and time of the apparent erasures on the document, becomes considerably weakened. We say this because it would be unreasonable to suppose that Durán should have made those erasures and that they should pass unnoticed after his death and during the entire probate proceedings.

To support the conclusion that the will was not vitiated by any unsaved erasures at the time of its probate, we have the testimony of Monserrate Rivera, the widow, that of Pedro Albizu Campos, and that of Rafael Díaz Cintrón, presiding judge at the time of the will's probate. In addition to this we have the *prima facie* case in favor of its perfect condition arising as a result of its probate and all the evidence presented to show the happy relations between testator and his widow which tended to support such a testamentary disposition. We disagree with the appellant when he intimates in his brief that it is up to this court, or any court, to determine who made the erasures. Having arrived at the conclusion that the erasures, which are evident, were introduced into the document at a time subsequent to its probate, there is no necessity to determine the identity of the wrongdoer. The appellant has not presented a sufficient case. He merely raised a doubt as to the validity of the will by showing that eight years after it had been duly probated, it appeared to have certain erasures. In our opinion that is not enough, especially in view of the fact that the record in probate was examined by strangers to the will on several occasions after its probate, including one of the attorneys for the plaintiff,

although this in itself has no special significance. What does have significance is that there was more than one opportunity for someone to effect the erasures.

The last assignment of error deals with the imposition of costs. We find no reason to disturb it.

The judgment appealed from should be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.